**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BRETT BUSSEY,

      Plaintiff,

vs.                                    No. CIV 25-0605 JB/KRS

KENWORTH TRUCK COMPANY,
PACCAR, INC., CUMMINS, INC.,
MHC TRUCK LEASING, LLC, TEXAS
KENWORTH COMPANY, LLC,
BERGSTROM, INC., and BERGSTROM
MANUFACTURING, CO.,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Defendant Cummins Inc.'s Fed. R. Civ. P.

12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum, filed October 22,

2025 (Doc. 46)("MTD"). The Court holds a hearing on the MTD on December 4, 2025. See

Clerk's Minutes at 1, filed December 4, 2025 (Doc. 62)("Clerk's Minutes"); Draft Hearing

Transcript of Proceedings at 1 (taken December 4, 2025)(Court)("2025 Tr.").[1] The primary issue

before the Court is whether Plaintiff Brett Bussey states a claim against Defendant Cummins, Inc.,

a component manufacture, for: (i) strict product liability and supplier failure to warn, where Bussey

does not allege facts concerning the dangerousness of Cummins, Inc.'s engine when the engine

leaves Cummins, Inc.'s control and before Defendants Kenworth Truck Company ("Kenworth

Trucking") and PACCAR, Inc. incorporate the engine into the vehicle; and (ii) supplier negligence

and gross negligence, where Cummins, Inc. manufactures a component of a four-year old vehicle

that does not appear defective when it leaves the control of the manufacturer. The Court concludes

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

that Bussey does not state a claim against Cummins, Inc. a component manufacture, for: (i) strict product liability and supplier failure to warn, where Bussey does not allege facts concerning the dangerousness of Cummins, Inc.'s engine when the engine leaves Cummins, Inc.'s control and before Kenworth Trucking and PACCAR, Inc. incorporate the engine into the vehicle, because a component manufacture is strictly liable only if the component is unreasonably dangerous at the time it leaves the manufacturer's control, and the Plaintiff's First Amended Complaint, filed September 29, 2025 (Doc. 43-1)("FAC"), lacks facts regarding the engine's dangerousness when it leaves Cummins, Inc.'s control; and (ii) supplier negligence and gross negligence, where Cummins, Inc. manufactures a component of a four-year old vehicle that does not appear when it leaves the control of the manufacturer, because Cummins, Inc. does not owe a duty to Bussey regarding the final product, in this case the vehicle, and Cummins, Inc. does not owe a duty to repair or recall the engine.  Accordingly, the Court grants the MTD and dismisses Bussey's claims against Cummins, Inc.

## FACTUAL BACKGROUND

The Court takes the facts from the FAC.  As this matter comes before the Court on a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes that all facts in the FAC are true.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555(2007)("Twombly")(stating that, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").  The Court "grants all reasonable inferences from the pleadings in that party's favor," Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012).

1.    **Events leading up to the Accident.**

Bussey drives a 2019 Kenworth T800 Conventional, vehicle identification number: 1XKDD40X2KJ284369 ("Vehicle"). FAC ¶ 4.7, at 8. In August, 2023, the Vehicle's "check engine" light illuminates, "prompting diagnostic and repair actions involving" Defendant Texas Kenworth Company, LLC ("Texas Kenworth"). FAC ¶ 4.5, at 8. Texas Kenworth takes the Vehicle to Southeast ReadiMix, where a diagnostic download of the Vehicle identifies "a defective Diesel Exhaust Fluid (DEF) sensor." FAC ¶ 4.5, at 8. The download does not identify "any issues with the [Vehicle's] exhaust manifold or the seal on the mastic patch." FAC ¶ 4.5, at 8.[2] The exhaust manifold is a part of the engine, which Cummins, Inc. designs, manufactures, and sells. See FAC ¶ 1.5, at 3.

The Southeast ReadiMix mechanic replaces the DEF sensor and instructs Bussey "to return if the check engine light came on." FAC ¶ 4.6, at 8. Two or three days later, the check engine light reilluminates. See FAC ¶¶ 4.5-4.6, at 8. As a result of the reillumination and in an effort to comply with the Southeast ReadiMix mechanic's instructions, Bussey begins a trip from Tijeras Canyon, New Mexico, to Carlsbad, New Mexico. See FAC ¶ 4.6, at 8. During this trip, Bussey wrecks the Vehicle, which is the triggering event for this dispute. See FAC ¶ 4.1-4.4, at 6-8.

## 2.    The Accident.

On August 23, 2023, Bussey beings a trip from Artesia, New Mexico, to Tijeras Canyon around 1:00 in the morning. See FAC ¶ 4.1, at 6. Bussey completes the trip and begins a second trip from Tijeras Canyon to Carlsbad around 5:10 in the morning. See FAC ¶ 4.1, at 6. While traveling on US 285 in Torrance County, New Mexico, Bussey makes a right-handed turn when

---

[2] Bussey does not explain what a "mastic patch" is, but the Court understands Bussey to be referencing "mastic" as a type of seal. See Baumerk Construction Chemicals, What is Mastic? Where is Mastic Used, https://www.baumerk.com/en/blog/what-is-mastic (last visited June 9, 2026)("Mastic, which is a kind of filling material, helps to ensure that the connections are strong and impermeable when different materials such as concrete, wood, metal, and glass are brought together.").

he loses consciousness ("Incident").  See FAC ¶ 4.1-4.2, at 6.  "After that, he only remembers someone outside the cab calling 911, someone cutting his seatbelt, . . . then being at the University of New Mexico Hospital until he was discharged on August 28, 2023."  FAC ¶ 4.2, at 6.

The medical records provide insight into the cause of Bussey's wreck.  See FAC ¶ 4.3, at 7.  Bussey's "carbon monoxide level in his blood (COHb levels, specifically) . . . [is] 6.6%, which was abnormally high."  FAC ¶ 4.3, at 7.[3]  The COHb level reflects Bussey's status "nearly ten hours" after the wreck and despite receiving oxygen administration, which "significantly" decreases the COHb levels in the blood.  FAC ¶ 4.3, at 7.  Bussey "had enough carbon monoxide in his system to pass out at 5:49 A.M., which is exactly what happened right before this wreck."  FAC ¶ 4.3, at 7.  Suspicious of his COHb levels, Bussey hires "an expert to investigate this issue."  FAC ¶ 4.4, at 7.

Peter Leiss conducts a "non-destructive investigation" of the Vehicle.  FAC ¶ 4.4, at 7.[4]  "He found that there was an exhaust gas leak in the rear leg of the exhaust manifold."  FAC ¶ 4.4, at 7.  Additionally, he finds "that the seal on the mastic patch around the subject vehicle's HVAC box allows those harmful gases from the exhaust manifold leak . . . to enter the HVAC system and thereby enter the [Vehicle's] cabin."  FAC ¶ 4.4, at 7. The Heating, Ventilation, and Air Conditioning ("HVAC") system regulates a vehicle's interior temperature by using components

---

[3] Bussey does not define COHb.  See FAC at 1-26.  The Court understands, however, COHb to reference carboxyhemoglobin.  Carboxyhemoglobin "is a stable complex of carbon monoxide that forms in red blood cells when carbon monoxide is inhaled."  Carboxyhemoglobin, Medscape Reference Range (July 23, 2025), https://emedicine.medscape.com/article/2085044-overview (last visited June 9, 2026).  Carboxyhemoglobin is the clinical value healthcare providers measure when they suspect carbon monoxide poisoning.  See Carboxyhemoglobin, Medscape Reference Range (July 23, 2025), https://emedicine.medscape.com/article/2085044-overview (last visited June 9, 2026)("COHb should be measured if carbon monoxide or methylene chloride poisoning is suspected.").

[4] Peter Leiss is a professional engineer, with Robson Forensic, Inc., whom Bussey hires to perform an inspection of the Vehicle.  See Declaration of Peter J. Leiss, P.E., Pursuant to 28 USC 1746, filed November 5, 2025 (Doc. 54-1)("Leiss Decl.").

housed within the engine compartment, including a heater core that circulates engine coolant to heat or cool incoming air drawn either from outside or recirculated within the cabin. See FAC at 29. HVAC system manufacturers design them to condition and distribute airflow while maintaining a barrier between the engine compartment and the passenger cabin, thereby preventing the inadvertent introduction of engine gases into the vehicle's air. See FAC at 28-29.

## PROCEDURAL BACKGROUND

On September 29, 2025, Bussey files the First Amended Unopposed Motion for Leave to Amend Complaint (Doc. 43)("Motion"). Motion at 1. Bussey files the FAC on September 29, 2025. FAC at 1. Cummins, Inc. files the MTD on October 22, 2025. See MTD at 1. In response, Bussey files the Plaintiff's Response to Defendant Cummins, Inc.'s Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum at 1, filed November 5, 2025 (Doc. 54)("Response"). On November 19, 2025, Cummins, Inc. files the Defendant Cummins Inc.'s Reply in Support of Motion to Dismiss at 1 (Doc. 55)("Reply"). Below, the Court discusses the Motion and the MTD.

### 1. The Motion to Amend and the First Amended Complaint.

In the Motion, Bussey requests leave to amend the Plaintiff's Original Complaint, filed June 27, 2025 (Doc. 1)("Complaint"). Bussey requests to amend the Complaint for two reasons. See Motion ¶ 1.1-1.5, at 1-2. First, Bussey files the Motion, because Defendant MHC Truck Leasing, LLC ("MHC Leasing"), "contended it was not the correct party." Motion ¶ 1.1, at 1. MHC Leasing also informs Bussey that the correct party is Texas Kenworth. See Motion ¶ 1.1, at 1. Bussey and MHC Leasing agree to dismiss MHC Leasing from the lawsuit and add Texas Kenworth as the correct defendant. See Motion ¶ 1.1, at 1-2. MHC Leasing's counsel represents both Texas Kenworth and PACCAR, Inc. stating that all three parties do not oppose the Motion. See Motion ¶ 1.3, at 2. Second, Bussey seeks "to attach an expert report as an exhibit to his

complaint and have the amended complaint with the expert report considered" as the FAC.  Motion

¶ 1.2, at 2.  According to Bussey, the "expert report was referred to in Plaintiff's Original

Complaint, but was inadvertently not included with Plaintiff's Original Complaint when it was

filed."  Motion ¶ 1.2, at 2.  Cummins, Inc. does not oppose Motion's substance.  See Motion ¶ 1.4,

at 2.  Consequentially, the Court dismisses Bussey's claims against MHC Leasing, without

prejudice, see Order Dismissing Claims Against MHC Truck Leasing, LLC Without Prejudice at

1, filed September 12, 2025 (Doc. 40), and grants the Motion, see Order Granting Plaintiff's First

Amended Unopposed Motion for Leave to Amend Complaint at 1, filed October 8, 2025 (Doc 44).

### 2.    Cummins, Inc.'s Motion to Dismiss.

On August 18, 2025, Cummins, Inc. files the Defendant Cummins Inc.'s Fed. R. Civ. P.

12(b)(6) Motion to Dismiss and Supporting Memorandum (Doc. 25).  However, before the Court

grants the Motion, Cummins files the MTD, responding to the FAC.  See MTD at 1 n.1.  Cummins,

Inc. alleges that Bussey fails to state a claim against it, as the engine manufacturer, for: (i) strict

product liability, see MTD at 6-12; (ii) negligence, see MTD at 12-18; and (iii) gross negligence,

see MTD at 19-20.  Accordingly, Cummins, Inc. requests that the Court "dismiss with prejudice

all claims" in the FAC.  MTD at 20.

### a.    Product Liability Claims.

Cummins, Inc. alleges that Bussey's product liability claims, under a theory of strict

liability, fail for multiple reasons.  See MTD at 6-12.  First, Cummins, Inc. contends that Bussey

"fails to allege that Cummins, Inc., a component manufacturer, is strictly liable under a products

liability theory."  MTD at 6.  According to Cummins, Inc., product liability claims apply to "the

supplier of a component part that causes injury only if, when incorporated into the finished product,

the component part is substantially unchanged or is in a condition in which it could have been

reasonably expected to have been used."  MTD at 6 (citing Pac. Indem. Co. v. Therm-O-Disc, Inc.,

476 F. Supp. 2d 1216, 1228 (D.N.M. 2006)(Hansen, J)("Therm-O-Disc")).  Moreover, Cummins, Inc. asserts, a "component part manufacturer is only strictly liable if the component part was unreasonably dangerous at the time it left the manufacturer's control."  MTD at 6 (citing Therm-O-Disc, 476 F. Supp. at 1228 (citing Parker v. E.I. DuPont de Nemours & Co., 1995-NMCA-086 ¶ 11, 121 N.M. 120, 124-25, 909 P.2d 1, 5-6 ("Parker"))).  In essence, Cummins, Inc. argues that it "'does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product; in such situation any duty to warn rests upon the manufacturer of the device or finished product.'"  MTD at 7 (emphasis removed)(quoting Therm-O-Disc, 476 F. Supp. at 1228).  According to Cummins, Inc., Bussey's product liability claims fail, because the FAC does not contain facts supporting that the engine is defective when it leaves Cummins, Inc.'s control, nor does the FAC allege facts supporting the conclusion that Cummins, Inc. owes Bussey a duty to warn, or otherwise, "as to other components or the finished product."  MTD at 9.

Second, Cummins, Inc. asserts that, even if a duty to warn exists, Bussey "fails to allege any facts to support that any warnings or directions from Cummins, Inc. would have been noticed and acted upon . . . ."  MTD at 11.  Cummins, Inc. bases this argument on the fact that the check engine light reilluminates and that Bussey continues to drive the Vehicle.  See MTD at 11.  The implication, according to Cummins, Inc., is that Bussey "concedes that the alleged failure by Cummins to warn Plaintiff did not proximately cause any injures . . . ."  MTD at 11-12.  Accordingly, because Bussey does not allege facts that show Cummins, Inc. owes him a duty, according to Cummins Inc., and because any such duty does not cause proximately his damages, Bussey fails to state a products liability claim against Cummins, Inc.  See MTD at 11-12.

        **b.**        **Negligence Claims.**

Cummins, Inc. asserts that Bussey does not state facts showing Cummins, Inc. owes him a duty, that Cummins, Inc. breaches a duty, and that any breach proximately causes Bussey harm. See MTD at 12-18. Cummins, Inc. summarizes Bussey's negligence claims as:

1) failing to properly seal the HVAC box in the Vehicle,

2) by designing the truck to prevent operation when carbon monoxide is detected in the cabin,

3) failing to install a carbon monoxide alarm or monitor in the vehicle,

4) not inspecting the Vehicle to learn about "safety hazards,"

5) failing to warn Plaintiff.

6) by not designing the exhaust manifold so that no exhaust gases are able to leak without detection under the hood,

7) by not "correctly and safely manufacturing" the exhaust manifold, and

8) not repairing or recalling the exhaust manifold.

MTD at 12. Cummins, Inc. asserts that claims one through five above do not apply to it, because it does not manufacture the relevant component or the final product, and "New Mexico law does not extend such duty upon component part manufacturers." MTD at 12-13. Moreover, Cummins, Inc. continues, "a component manufacturer does not owe a duty to test the sustainability of another's finished product which is assembled from several different components." MTD at 13 (citing Thermal, 476 F. Supp. 2d at 1230). Lastly, Cummins, Inc. argues that New Mexico imposes no duty on a component manufacturer to recall the exhaust manifold. See MTD at 13-14. According to Cummins, Inc. this rule is because "the continuing duty of care only applies if the manufacturer knew or should have known of a risk caused by its product." MTD at 14.

Cummins, Inc. argues that Bussey fails to allege facts supporting a breach of a duty that a negligence claim requires. See MTD at 14. Cummins, Inc. asserts that the only facts in the FAC that pertain to the engine are: (i) "the engine light was illuminated before the accident"; (ii) "upon

- 8 -

inspection by another party it was allegedly determined that the engine had a DEF sensor issue";
and (iii) "that at some unknown time after the Vehicle was wrecked, Mr. Leiss observed a dark
stain on the exhaust manifold." MTD at 15. These facts fail to state a breach, according to
Cummins, Inc., for multiple reasons. See MTD at 15-7. First, Cummins, Inc. argues that Bussey
fails to assert a design or manufacture defect, because the Leiss's report does "not even identify an
alleged defect with the engine, expressly conceding that an examination of the vehicle is required
before any such defect can even be identified," and the FAC does not allege "facts to support that
any exhaust issue preceded the Incident, which presumably caused physical damage to multiple
components of the vehicle." MTD at 15. Similarly, Cummins, Inc. argues that the FAC does not
allege "the age of the engine or whether the engine had a history of any such leaks or even whether
the engine or vehicle had experienced any other damage prior to this incident that would support
an inference of a manufacturing or design defect." MTD at 15. Second, Cummins, Inc. argues
there is no breach based on a failure to warn, because Bussey "expressly avers that the 'check
engine' light was illuminated." MTD at 16 (quoting FAC ¶¶ 4.4-4.6, at 8). Third, according to
Cummins, Inc., Bussey fails to state a negligence breach "for failing to repair or recall the exhaust
manifold because Plaintiff alleges no facts that support Cummins failed to repair or recall an
existing defect." MTD at 16. Finally, Cummins, Inc. argues that Bussey may not rely on res ipsa
loquitur to prove breach, because "the Vehicle and its component were not subject to the exclusive
control of Cummins," Inc., and Bussey "asserts no facts to support that Plaintiff's injury would not
have occurred except for the negligence of Cummins." MTD at 17.

        **c.**      **<u>Gross Negligence Claims</u>.**

        Cummins, Inc. argues that Bussey fails to state a claim of gross negligence against it,
because the FAC does not contain facts that Cummins, Inc. "acted maliciously, recklessly,
wantonly, oppressively, or fraudulently." MTD at 19. The facts are necessary, according to

Cummins, Inc., because New Mexico law requires that a defendant commit "'an act or omission . . . with conscious indifference to harmful consequence'" or fail "'to exercise even slight care'" to constitute gross negligence.  MTD at 19 (quoting Smith v. Ingersoll Rand Co., 214 F.3d 1235, 1251 (10th Cir. 2000)).  What Bussey alleges, according to Cummins, Inc., is that Cummins, Inc. "intentionally chose not to put a detector or warning device in the Vehicle's cabin."  MTD at 19.  Cummins, Inc. asserts that this allegation is not sufficient to plead a gross negligence claim and that, thus, Bussey fails to state a claim.  See MTD at 19.

## LAW REGARDING DIVERSITY JURISDICTION

Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Previously, the Court explains that "[t]he Supreme Court of the United States has described [the] statutory diversity requirement [in 28 U.S.C. § 1332(a)] as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N. R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court discusses the two requirements in turn.

### 1.     Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship.  See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place

in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)). A corporation, on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)). See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1065 (D.N.M. 2019)(Browning, J.); De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1150 (D.N.M. 2015)(Browning, J.); Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1213-14 (D.N.M. 2013)(Browning, J.).

2.      **Amount in Controversy.**

The statutory amount-in-controversy requirement, $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs

aggregate their claims against a single defendant to exceed the threshold.  Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. 2010)(Browning, J.).  If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims.  See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct."  Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81 (2014).  The same plaintiff's multiple claims against the same defendant may be aggregated, even if the claims are entirely unrelated.  See 14AA Wright & Miller's Federal Practice and Procedure § 3704, at 566-95 (4th ed. 2011).  While the rules on aggregation may appear complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant.  The court may then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence.  See McPhail v. Deere & Co., 529 F.3d at 953.  In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in

controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955. The Supreme Court clarifies that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. at 88. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 574 U.S. at 88.

## LAW REGARDING DIVERSITY JURISDICTION AND CHOICE OF LAW

When a court's jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332, the court should look to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). In New Mexico, choice-of-law analysis is a two-step process. See Mosely v. Titus, 762 F. Supp. 2d 1298, 1314 (D.N.M. 2010)(Browning, J.)(citing Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 14, 142 P.3d 374, 377). "First, the Court must characterize the 'area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue.'" Mosely v. Titus, 762 F. Supp. 2d at 1314 (quoting Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 11, 142 P.3d at 377). The next step is to apply New Mexico's choice-of-law rule. See Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 15, 142 P.3d at 377).

- 13 -

"In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place." Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Torres v. State, 1995-NMSC-025, ¶ 13, 894 P.2d 386, 390). The place of the wrong is the location of the last act necessary to complete the injury. See Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Torres v. State, 1995-NMSC-025, ¶ 13, 894 P.2d at 390). "Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred." Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing First Nat'l Bank v. Benson, 1976-NMCA-072, ¶ 6, 553 P.2d 1288, 1289).

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Tr. Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[5] If the Court finds only an

---

[5] In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1247 n.30 (D.N.M. 2014)(Browning, J.). Courts should be reticent to formulate an Erie prediction that conflicts with state court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial and appellate courts. The factors to which a federal court should

opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d at 1332 (noting that, where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[6]  The Court may also rely on decisions by the

_____

look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[6] The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question

Tenth Circuit interpreting New Mexico law.  See Anderson Living Trust v. WPX Energy Prod.,

LLC, 27 F. Supp. 3d at 1243 & n.30. Ultimately, "the Court's task is to predict what the state

supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666.  Accord Mosley v. Titus,

762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1188-

89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at 665-66).

## NEW MEXICO LAW REGARDING STRICT PRODUCTS LIABILITY

---

as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

. . . .

We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

. . . .

The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Moore's")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

New Mexico has adopted the basis for products liability found in Restatement (Second) of Torts § 402A (1965)("Restatement of Torts").  See Stang v. Hertz Corp., 1972-NMSC-031, 83 N.M. 730, 497 P.2d 732.  The policy underpinnings supporting imposition of strict liability on product manufacturers and suppliers include

> [i] placing the cost of injuries caused by defective products on the manufacturer who is in a better position to pass the true product cost on to all distributors, retailers, and consumers of the product; [ii] relieving the injured plaintiff of the onerous burden of establishing the manufacturer's negligence; [iii] providing full chain of supply protection; and, [iv] in the interest of fairness, providing relief against the manufacturer who -- while perhaps innocent of negligence -- cast the defective product into the stream of commerce and profited thereby.

Brooks v. Beech Aircraft Corp., 1995-NMSC-043, ¶ 22, 120 N.M. 372, 902 P.2d 54, 57-58.[7]  See Smith ex rel. Smith v. Bryco Arms, 2001-NMCA-090, ¶ 12, 131 N.M. 87, 33 P.3d 638, 644 (reiterating the same four principles).

---

[7] The Supreme Court of New Mexico explained in more detail that:

> The policy of risk- or cost-distribution continues to serve as a primary basis for imposing strict products liability. . . . In addition to the cost-distribution rationale . . . other courts have approved specifically the rationale that imposing strict liability relieves plaintiffs of the burden of proving ordinary negligence under circumstances in which such negligence is likely to be present but difficult to prove. . . . The third policy cited for the imposition of strict liability is that suppliers who otherwise might not be liable because of a passive role in the chain of supply should be encouraged to select reputable and responsible manufacturers who generally design and construct safe products and who generally accept financial responsibility for injuries caused by their defective products. . . . Fourth and finally, imposing strict products liability serves the interests of fairness. . . . The fairness rationale embodies a normative judgment that plaintiffs injured by an unreasonably dangerous product should be compensated for their injuries.  At the heart of this judgment lies the conclusion that although the manufacturer has provided a valuable service by supplying the public with a product that it wants or needs, it is more fair that the cost of an unreasonable risk of harm lie with the product and its possibly innocent manufacturer than it is to visit the entire loss upon the often unsuspecting consumer who has relied upon the expertise of the manufacturer when selecting the injury-producing product.

1995-NMSC-043, ¶ 15-18, 120 N.M. 372, 902 P.2d at 57-58 (internal citations omitted).

"Under the 'product liability' claim, a supplier in the business of putting a product on the market is liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from a manner of its use."  N.M.R.A., Civ. UJI 13-1406.  See Stang v. Hertz Corp., 1972-NMSC-031, ¶ 6, 497 P.2d 732, 734;  Trujillo v. Berry, 1987-NMCA-072, ¶ 5 n.1, 738 P.2d 1331, 1333 n.1 (stating that "the purpose behind the strict products liability doctrine is to allow an injured user . . . to recover against a supplier . . . without the requirement of proving negligence.").  For a plaintiff to recover under strict products liability, the plaintiff must prove:

> (1)     that the product was sold in a defective condition unreasonably dangerous to the user or consumer or to his property;
>
> (2)     that the seller was engaged in the business of selling such a product; and
>
> (3)     that the product was expected to and did reach the consumer without substantial change in the condition in which it was sold.

Standhardt v. Flintkote Co., 1973-NMSC-040, ¶ 14, 508 P.2d 1283, 1290.  "Seller" is not an exclusive, restrictive term for identifying potential defendants in a strict products liability action. See N.M.R.A., Civ. UJI 13-1406 cmt.  New Mexico's Civil Uniform Jury Instructions ("UJI") use the term "supplier" to identify a liable party under strict products liability.  N.M.R.A., Civ. UJI 13-1406 cmt.  The committee commentary to the jury instruction states that "certain commercial promotions or other transactions do not involve the business of selling a product, [thus] the committee chose 'business of putting the product on the market'" rather than simply "seller." N.M.R.A., Civ. UJI 13-1406 cmt.  The committee stated that "supplier" captures the Supreme Court of New Mexico's rationale for adopting strict products liability better than "seller," because holding those who put a defective product on the market liable serves the risk-balancing goal of strict products liability.  N.M.R.A., Civ. UJI 13-1406 cmt. (citing Escola v. Coca Cola Bottling Co., 150 P.2d 436, 440-41 (Cal. 1944) for its discussion of risk-distribution, in which the Supreme Court of California states that: "public policy demands that responsibility be fixed wherever it will

most effectively reduce the hazards to life and health inhere in defective products that reach the market").

While the Supreme Court of New Mexico has allowed plaintiffs to recover from manufacturers, retailers, and wholesalers, New Mexico courts have specifically declined to hold an employer strictly liable for harm caused by a product that employees use in their course of work. Compare AALCO Mfg. Co. v. City of Española, 1980-NMSC-088, ¶¶ 3-6, 618 P.2d 1230, 1231 (stating that strict liability applies to manufacturers, wholesalers, and retailers), with Trujillo v. Sonic Drive-In/Merritt, 1996-NMCA-106, ¶ 29, 924 P.2d 1371, 1377 ("[W]e are not persuaded that, under the doctrine of strict products liability, Employer would be considered the supplier . . . thus making it strictly liable for injuries caused by a defect in [an ice cream machine]."). In Trujillo v. Sonic Drive-In/Merritt, the Court of Appeals of New Mexico cited N.M.R.A., Civ. UJI 13-1406, and held that an employer could not be held strictly liable for the injuries a defective ice-cream machine caused to employees, because the employer was not a "supplier" of the machine. 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1377-78. The Court of Appeals of New Mexico distinguished a prior case that held that the operator of a car wash could be strictly liable for the injuries that machinery used at the car wash inflicted on a customer. See 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1378 (distinguishing Trujillo v. Berry (holding that a car-wash operator may be strictly liable for injuries caused by machinery used on its property, if a trial court determines that the car-wash operator was a "supplier" of the defective machine)). The Court of Appeals of New Mexico explained that the prior case "would only have [imposed strict products liability] if the car-wash defendant was later determined by the trial court to be a supplier," a determination which the trial court did not make in that case. 1996-NMCA-106, ¶ 29, 924 P.2d at 1378. The Court of Appeals of New Mexico ruled, therefore, that the employer was not strictly liable for owning a defective

machine which inflicted injuries on an employee while the employee operated it.  See 1996-NMCA-106, ¶¶ 29-30, 924 P.2d at 1378.

The Court has interpreted New Mexico strict-products liability law to foreclose recovery against parties that do not place an allegedly defective product on the market.  See Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (D.N.M. 2005)(Browning, J.).  The Court explained that, in Arenivas v. Continental Oil Co., 1983-NMCA-104, 692 P.2d 31, an operator and part-owner of an oil field was not the supplier of a pumping unit used on the land, because it "did not in any way place the pumping unit in the stream of commerce."  Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (quoting Arenivas v. Continental Oil Co., 1983-NMCA-104, ¶ 15, 692 P.2d at 34).  The Court also explained that, in Livingston v. Begay, 1982-NMSC-121, 652 P.2d 734, the Supreme Court of New Mexico concluded that "a motel operator is not strictly liable for defects in the fixtures and furnishings of the rooms he holds out to the public," because the motel operator has not introduced those items into the "stream of commerce."  Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (quoting Livingston v. Begay, 1982-NMSC-121, ¶ 29, 652 P.2d at 739).  "The thread that binds these cases is that, in each case, the alleged supplier did not sell the defective product to anyone."  Provencio v. Ford Motor Co., 2005 WL 3662957, at *8.  Accordingly, a party who does not sell or otherwise place an allegedly defective product in the stream of commerce may not be strictly liable for any alleged harm the product caused, and, thus, may not be jointly and severally liable for harm the product causes under New Mexico's strict products liability law.  See Livingston v. Begay, 98 N.M. at 716-17, 652 P.2d at 739.

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  See Coffey v. United

States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825, overruled on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249.  Generally, negligence is a question of fact for the jury.  See Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729.  "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  Baxter v. Noce, 1988-NMSC-024, ¶ 11, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owes a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186.  New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and

(2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84. "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause[8] of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the

---

[8] The 2004 amendments to Uniform Jury Instruction 13-305 eliminated the word "proximate" within the instruction. See Use Note, N.M. Rul. Amend. Civ. UJI 13-305. The drafters added, however, that the change was "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause." Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305.

same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## LAW REGARDING PUNITIVE DAMAGES

"Punitive damages 'are not compensation for injury.'" Gonzales v. Surgidev Corp., 1995-NMSC-047, ¶ 12, 899 P.2d 594, 597 (quoting State v. Powell, 1992-NMCA-086, ¶ 13, 839 P.2d 139, 144). "Punitive damages do not measure a loss to the plaintiff, but rather punish the tortfeasor for wrongdoing and serve as a deterrent." Sanchez v. Clayton, 1994-NMSC-064, ¶ 11, 877 P.2d 567, 572. "Punitive damages may not be awarded unless there is an underlying award of compensation for damages." Gonzales v. Surgidev Corp., 1995-NMSC-047, ¶ 12, 899 P.2d at 597 (citing NMRA, Rule 13-1827). "Punitive damages serve two important policy objectives under our state common law: to punish reprehensible conduct and to deter similar conduct in the future." Akins v. United Steel Workers of Am. Local 187, 2010-NMSC-031, ¶ 20, 237 P.3d 744, 749 (citing Bogle v. Summit Inv. Co., 2005-NMCA-024, ¶ 34, 107 P.3d 520, 531). "[T]he award of punitive damages requires a culpable mental state because such damages aim to punish and deter 'culpable conduct beyond that necessary to establish the underlying cause of action.'" Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 58, 346 P.3d 1136, 1152 (quoting Walta v. Gallegos Law Firm, P.C., 2002-NMCA-015, ¶ 56, 40 P.3d 449, 461). "New Mexico recognizes that, although punitive damages are not normally available for a breach of contract, a plaintiff may recover punitive damages when a defendant's breach was 'malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights.'" Anderson Living Tr. v. ConocoPhillips Co., 952 F. Supp. 2d at 1046 (citing Romero v. Mervyn's, 1989-NMSC-081, ¶ 23, 784 P.2d 992, 998).

In determining punitive-damage awards, New Mexico courts apply a preponderance-of-the-evidence standard. See Jessen v. Nat'l Excess Ins., 1989-NMSC-040, ¶ 15, 776 P.2d 1244,

1247-48 (citing United Nuclear Corp. v. Allendale Mut. Ins., 1985-NMSC-090, ¶¶ 14, 89, 709 P.2d 649, 653, 666).  "To be liable for punitive damages, a wrongdoer must have some culpable mental state and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level."  Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 12, 881 P.2d at 14 (citations omitted)(citing McGinnis v. Honeywell, Inc., 1990-NMSC-043, ¶ 31, 791 P.2d 452, 460; Loucks v. Albuquerque Nat'l Bank, 1996-NMSC-176, ¶ 48, 418 P.2d 191, 199).  Factors to be weighed in assessing punitive damages are the enormity and nature of the wrong, and any aggravating circumstances.  See Green Tree Acceptance, Inc. v. Layton, 1989-NMSC-006, ¶ 9, 769 P.2d 84, 87 (citing Sweitzer v. Sanchez, 1969-NMCA-055, ¶ 26, 456 P.2d 882, 886).  Punitive damages may be imposed "when a party intentionally or knowingly commits wrongs," or "when a defendant is utterly indifferent to the plaintiff's rights, even if the defendant lacked actual knowledge that his or her conduct would violate those rights."  Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 58, 346 P.3d at 1152 (citing NMRA, Rule 13-1827; Kennedy v. Dexter Consol. Schs., 2000-NMSC-025, ¶ 32, 10 P.3d 115, 125-26).  "Recklessness requires indifference to the rights of the victim, rather than knowledge that the conduct will violate those rights."  Kennedy v. Dexter Consol. Schs., 2000-NMSC-025, ¶ 32, 10 P.3d at 125 (citing Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 28, 987 P.2d 386, 397).  "Recklessness in the context of punitive damages refers to 'the intentional doing of an act with utter indifference to the consequences.'"  Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 28, 987 P.2d at 397 (quoting NMRA, Rule 13-1827).  "The degree of the risk of danger involved in the activity in question is a relevant factor in determining whether particular conduct rises to the level of recklessness."  Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 28, 987 P.2d at 397.  "A defendant does not act with reckless disregard to a plaintiff's rights merely by failing 'to exercise even slight care,' absent the requisite 'culpable or evil state of mind.'"  Anderson Living Tr. v. ConocoPhillips Co., 952 F. Supp. 2d at 1031 (quoting Paiz v. State

Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308).   The Court has previously addressed punitive damages under New Mexico law in various situations.  See, e.g., Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d at 1242 (holding a genuine issue of material fact on punitive damages existed where a party had "demonstrated that persons at Eli Lilly may have been aware of a problem, perceived or actual, linking Prozac with increased suicidality and violence"); Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1196 (D.N.M. 2007)(Browning, J.)(granting punitive damages where the defendant "intentionally deceived Applied Capital, misrepresenting Legato Staffing's financial resources and creditworthiness, the existence of the rig, and the bona fides of the transaction generally"); Faniola v. Mazda Motor Corp., No. CIV 02-1011 JB/RLP, 2004 WL 1354469, at *1, *6 (D.N.M. April 30, 2004)(Browning, J.)(noting that "a reasonable factfinder could [not] find that Mazda had a culpable mental state in designing [a] fuel tank" when "Mazda's design was and is accepted in the industry," and the design met "federal safety standards," although the facts showed that "[t]he brake shoe rotated under Faniola's vehicle, striking several places, and punctured her gas tank," causing the car to catch fire).

While the Supreme Court of New Mexico has not addressed punitive damages arising from automobile accidents, the Court of Appeals of New Mexico has upheld punitive damages awards when drivers used alcohol or drugs, drove while intoxicated and suffering from an extreme lack of sleep, and drove erratically or far beyond the speed limit.  See DeMatteo v. Simon, 1991-NMCA-027, 812 P.2d 361; Svejcara v. Whitman, 1971-NMCA-093, 487 P.2d 167; Sanchez v. Wiley, 1997-NMCA-105, 946 P.2d 650.  In Svejcara v. Whitman, the Court of Appeals of New Mexico upheld a jury's punitive damages award:

> Defendant was driving in a reckless manner while intoxicated.  He turned into slow moving on-coming traffic.  He stated he was traveling three miles per hour and yet the force of his car's impact spun plaintiffs' car almost 90 degrees, blew out the left rear tire, bent the left rear wheel, ruptured the gas tank, and bent the left rear door and fender for a total damage exceeding $1,000.00.  The collision caused both plaintiffs to receive personal injuries some of which are permanent and disabling.

1971-NMCA-093, ¶ 21, 487 P.2d at 170.  The Court of Appeals of New Mexico likewise upheld a jury's award in DeMatteo v. Simon, wherein the party "drove three to four hours the day before the accident, slept about five hours in his car, remained awake for the next twenty hours immediately prior to the accident, and then consumed marijuana shortly before the accident allowed the jury to conclude that punitive damages were warranted."  1991-NMCA-027, ¶ 7, 812 P.2d at 364.  In Sanchez v. Wiley, the Court of Appeals of New Mexico reversed a directed verdict for the defendant, because, as the defendant "appeared to be under the influence of alcohol immediately following the accident," a jury could reasonably award punitive damages.  1997-NMCA-105, ¶ 16, 946 P.2d at 655.

The Court predicts that the Supreme Court of New Mexico would agree with these Court of Appeals of New Mexico cases.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 708 F. Supp. 2d at 1224-25.  The Supreme Court of New Mexico has made clear that utter indifference is sufficient for awarding punitive damages, and the risks, even if not the certainty that a harm will occur, associated with excessive speed, erratic driving, and alcohol and drugs while driving are both known and high.  See, e.g., Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 58, 346 P.3d at 1152; Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 28, 987 P.2d at 397; Green Tree Acceptance, Inc. v. Layton, 1989-NMSC-006, ¶ 9, 769 P.2d at 87.  Further, the Supreme Court of New Mexico considers a party's knowledge of and failure to follow state law when upholding punitive damages awards.  See Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 21, 881 P.2d at 16 ("Ferrellgas employees testified that they knew of the state laws that required them to install a vapor barrier and to properly vent the trunk of the car when they installed the tank. . . . There is no question that they did not comply with these requirements.").  In DeMatteo v. Simon, Svejcara v. Whitman, and Sanchez v. Wiley, the drivers using substances, speeding, and driving erratically egregiously violated well-established and understood driving rules and norms, which, like failing

to follow the regulations for installing propane tanks, accompany "high risk[s] of harm." Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 24, 881 P.2d at 17.

## ANALYSIS

Below, the Court discusses its analysis of the MTD. Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all of the complaint's well-pled factual allegations, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. See Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."). A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(citing Twombly, 550 U.S. at 555). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if the court assumes those facts to be true, state a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Taking the well-pleaded allegations as true, the Court concludes that Bussey does not state a claim for either products liability or negligence against Cummins, Inc. First, New Mexico law

limits the potential liability of Cummins, Inc., a component manufacture, to defects rendering its engine, or relevant component parts, unreasonably dangerous at the time the product leaves Cummins, Inc.'s control.  The FAC alleges no facts concerning the condition of the engine at the time the component left Cummins Inc.'s control.  To the contrary, the allegation that a Southeast ReadiMix mechanic inspects the engine shortly before the Incident and identifies no defect in the exhaust manifold suggests that any alleged defect arose after the engine left Cummins, Inc.'s control.  Second, the FAC does not allege plausibly that Cummins, Inc. breaches any duty it owes to Bussey.  The pleading focuses on alleged deficiencies in the Vehicle as a whole and does not identify any of Cummins, Inc.'s conduct that falls below the standard of ordinary care to prevent foreseeable injury.  Indeed, the fact that the check engine light illuminates after years undercuts any inference of negligence by suggesting that the system functions as intended and that any defect develops over time because of wear rather than because of negligent conduct.  Nor does the FAC plausibly allege a duty to recall, as New Mexico law does not obligate a manufacturer to recall a component absent knowledge of a defect.  Accordingly, the Court grants the MTD and dismisses Bussey's claims against Cummins, Inc.

I.      **BUSSEY'S STRICT PRODUCT LIABILITY CLAIMS FAIL, BECAUSE THE FAC DOES NOT ALLEGE THAT THE EXHAUST MANIFOLD IS DEFECTIVE WHEN <u>IT LEAVES CUMMINS INC.'S CONTROL</u>.**

In this diversity action, New Mexico's substantive law governs.  <u>See</u> <u>Morales v. E.D. Etnyre & Co.</u>, 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing <u>Martin v. Unit Rig and Equipment Co.</u>, Inc., 715 F.2d 1434, 1438 (10th Cir.1983)(looking to New Mexico law for products liability substantive law)).  New Mexico adopts the Restatement of Torts as the standard for products liability cases.  <u>See</u> <u>Skyhook v. Jasper</u>, 1977-NMSC-017 ¶¶ 2-13, 90 N.M. 143, 146-47, 560 P.2d 934, 937-038, <u>overruled on other grounds by</u> <u>Klopp v. Wackenhut Corp.</u>, 1992-

NMSC-008 ¶ 12, 113 N.M. 153, 157, 824 P.2d 293, 297.[9]  To succeed on a cause of action under a theory of strict products liability, a plaintiff must prove five elements: (i) the product is defective; (ii) the product is defective when it leaves the defendant's hands and is substantially unchanged when it reaches the user or consumer; (iii) the product, because of the defect, is unreasonably dangerous to the user or consumer; (iv) the product injures or damages the consumer; and (v) the product's defective condition is the proximate cause of the injury or damage.  See Nowell v. Medtronic Inc., 372 F. Supp. 3d 1166, 1227 (D.N.M. 2019)(Browning, J)("Nowell")(citing Armeanu v. Bridgestone/Firestone N. Am. Tire, L.L.C, No. CIV 05-0619 JB/DJS, 2006 WL 4060666 *3 (D.N.M. Sept. 26, 2006)(Browning, J.)) , aff'd, No. 19-2073, 2021 WL 4979300 (10th Cir. Oct. 27, 2021).  New Mexico law requires proof of a defect to succeed on a strict products liability claim.  See Nowell, 372 F. Supp. 3d at 1227 (citing Perfetti v. McGhan Med., 1983-NMCA-032, ¶ 45, 99 N.M. 645, 662 P.2d at 654).[10]  New Mexico courts recognize three defects applicable to a theory of products liability: design, manufacturing, and marketing (warnings).  See Nowell, 372 F. Supp. 3d at 1228 (citing Smith v. Bryco Arms, 2001-NMCA-090, ¶ 8, 131 N.M.

---

[9] New Mexico courts often look to tort law as stated in the Restatement of Torts.  See Schmitz v. Smentowski, 1990-NMSC-002, ¶ 49, 109 N.M. at 393, 785 P.2d at 736 ("We have also been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas."); Montanez v. Cass, 1975-NMCA-142, ¶ 39, 89 N.M. at 38, 546 P.2d at 1195 ("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d.").  The Court thinks that the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico in Montanez v. Cass and conclude that New Mexico follows the Restatement of Torts, because the Supreme Court of New Mexico frequently cites to the Restatement of Torts for tort rule statements.

[10] The Restatement of Torts requires that "the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."  Restatement of Torts § 402A cmt. g.  Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Perfetti v. McGhan Med. and conclude that to recover under the strict-liability theory, a plaintiff must prove that a defect in the product as manufactured, designed, or marketed creates an unreasonably dangerous risk of injury.

87, 33 P.3d at 643; <u>Fernandez v. Ford Motor Co.</u>, 1994-NMCA-063, ¶ 27, 118 N.M. 100, 879 P.2d 101, 110).  To recover under the strict-liability theory, a plaintiff must prove that a defect in the product as manufactured, designed, or marketed creates an unreasonably dangerous risk of injury. <u>See</u> <u>Nowell</u>, 372 F. Supp. 3d at 1228 (citing <u>Perfetti v. McGhan Med.</u>, 1983-NMCA-032, ¶ 9, 99 N.M. 645, 662 P.2d at 649-50).[11]

Here, Bussey does not state a claim for five reasons.  First, the FAC does not allege a defect at the time the product leaves Cummins, Inc.'s control.  Second, the FAC does not provide factual allegations supporting the temporal defect element to state a claim for strict products liability. Third, the FAC's allegations do not plausibly support an inference that the defect exists at the time the engine leaves Cummins, Inc. control.  Fourth, alternative explanations further undermine the plausibility of Bussey's claims.  Finally, Bussey's conclusory assertion of a defect is insufficient to meeting the <u>Twombly</u> pleading standard.

First, Bussey's strict liability claim fails at the threshold, because the FAC does not plausibly allege that the exhaust manifold is defective when it leaves Cummins, Inc.'s control, as the second element of a strict products liability claim requires.  <u>See</u> <u>Nowell</u>, 372 F. Supp. 3d at 1227.  The FAC instead alleges that a reasonably prudent person, with full knowledge of the risk, would find it unacceptable that: (i) Cummins, Inc. designs and manufactures an "exhaust manifold being able to leak exhaust gases without detection under the hood," FAC ¶ 5.24, at 17; (ii) Cummins, Inc. designs and manufactures "a partial mastic patch seal allowing air from under the hood poisoned by exhaust gases and carbon monoxide to be passed into the cabin," FAC ¶ 5.24, at

---

[11] The Restatement of Torts requires that "the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."  Restatement of Torts § 402A cmt. g.  Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in <u>Perfetti v. McGhan Med.</u> and conclude that to recover under the strict-liability theory, a plaintiff must prove that a defect in the product as manufactured, designed, or marketed creates an unreasonably dangerous risk of injury.

17-18; and (iii) Cummins, Inc. fails "to put a carbon monoxide level gauge, warning light, alarm, or monitor" in the Vehicle, FAC ¶ 5.24, at 18.  These allegations address the dangerousness of the Vehicle's design or warnings, but they do not allege that the exhaust manifold is defective at the time it leaves Cummins, Inc.'s control.  The allegations, even if true, do not state a claim, because they do not satisfy the temporal requirement for a strict products liability claim.  Moreover, allegations concerning the Vehicle are insufficient.  See Bellman v. NXP Semiconductors USA, Inc., 248 F. Supp. 3d 1081, 1141(D.N.M. 2017)(Browning, J.)("Bellman")(stating that a component manufacturer "does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product; in such situation any duty to warn rests upon the manufacturer of the device or finished product")(internal quotations omitted); Therm-O-Disc, 476 F. Supp. at 1228.

Second, the FAC is silent as to the condition of the exhaust manifold when Cummins, Inc. delivers the engine to Kenworth Truck and PACCAR, Inc. to incorporate into the Vehicle, and the FAC does not allege that the exhaust manifold remains "substantially unchanged" when the engine reaches Bussey.  MTD at 10 ("Additionally, Plaintiff fails to allege facts to support that the Cummins engine was defective when it left the hands of Cummins and was substantially unchanged when it reached Plaintiff.").  Even assuming that Kenworth Truck and PACCAR, Inc. do not significantly change the engine, which is a proposition the FAC does not allege, the pleading still does not address the exhaust manifold's condition at the time of delivery.  This omission is dispositive, because, without factual allegations addressing the exhaust manifolds condition on delivery, the FAC does not state a plausible strict liability claim.[12]  See Duran v. United Tactical

---

[12] Bussey contends that he "relies in part upon the doctrine of *res ipsa loquitur* to prove that the defective condition of the subject vehicle existed at the time the produce was supplied." FAC ¶ 5.26, at 18.  That reliance is not sound for several independent reasons grounded in New Mexico law.

As an initial matter, the doctrine of res ipsa loquitur is "a common use for circumstantial evidence which occurs in negligence actions" and is typically available where "it is impossible for the plaintiff to acquire direct evidence of specific acts of the defendant's negligence." J. Duke Thornton, Trial Handbook for New Mexico Lawyers § 14:7 (Westlaw 2025)("Thornton"). The doctrine permits, but does not compel, an inference of negligence, and "does not impose liability as a matter of law." Thornton, supra, § 14:7. Thus, where applicable, the doctrine allows a plaintiff to avoid a directed verdict; it does not relieve the plaintiff of pleading the elements of a products liability claim, including that the product engine is defective when it leaves Cummins Inc.'s control. See Thornton, supra, § 14:7 ("The doctrine of res ipsa loquitur does not impose liability as a matter of law; it only avoids a directed verdict against the person proving the applicability of the doctrine.").

Moreover, res ipsa loquitur does not apply where the plaintiff's theory rests on alleged design or warning defects rather than on a flaw in the product. See NMRA, Civ. UJI 13-1420. The UJI provides that res ipsa loquitur "has no application where the product was made as intended by the manufacturer, and liability is based solely upon contentions of inadequate warning or design." NMRA, Civ. UJI 13-1420. Bussey's allegation that the engine lacks "any means or method to even give Plaintiff a chance at detecting carbon monoxide in the cab" does not allege that Cummins, Inc. does not make the engine as Cummins, Inc. intends to make the engine, making his claim more likely a failure-to-warn or design-defect theory. FAC ¶ 5.26, at 18. Because Bussey does not allege that the exhaust manifold deviates from the design that Cummins, Inc. intends to manufacture, he cannot invoke res ipsa loquitur to establish that a manufacturing defect exists at the time the engine leaves Cummins, Inc.'s control.

Even assuming Bussey intends to rely on res ipsa loquitur to support a manufacturing-defect theory, the FAC does not allege elements the that the UJI requires. Under the UJI, Bussey must plead: (i) "that a defective condition existed at the time the plaintiff used the product"; (ii) "the reasonable probability that the condition of the product was not substantially altered after it left the defendant's possession"; and (iii) in the case of negligence claims, "that the defect is of a kind which usually does not exist unless the supplier of the product fails to use ordinary care." NMRA, Civ. UJI 13-1420. See State Farm Mut. Auto. Ins. Co. v. Newmar Corp., 543 F. Supp. 3d 1079, 1090 (D.N.M. 2021)(Johnson, C.J.)(stating that to apply res ipsa loquitur, "evidence must sufficiently establish that in the ordinary course of events an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality" (citing Trujeque v. Serv. Merch. Co., 1994-NMSC-036 ¶ 6, 117 N.M. 388, 872 P.2d 361, 364)). The FAC does not allege facts supporting any of these elements. In particular, it does not plead facts permitting a reasonable inference that the exhaust manifold is not substantially changed after it leaves Cummins, Inc.'s control or that the alleged failure ordinarily does not occur absent a manufacturing defect.

In addition, New Mexico law requires that Bussey ground the inference that the engine is defective, drawn from circumstantial evidence, in probability rather than speculation. See Mireles v. Broderick, 1994-NMSC-041, ¶ 7, 117 N.M. 445, 448, 872 P.2d 863, 866 ("Mireles")("We join the growing consensus of courts from other jurisdictions and adopt scholarly commentary to hold that the foundation for an inference of negligence may be formed by expert testimony that a certain occurrence indicates the probability of negligence."). The occurrence of an accident alone is insufficient; it must be one which ordinarily does not occur in the absence of negligence on the part of the person in control of the instrumentality. See Mireles, 1994-NMSC-041, ¶¶ 13-19, 117 N.M. 445, 872 P.2d at 868-870. Here, the FAC provides no factual context excluding alternative explanations, such as normal wear and tear, post-sale use, or alteration. Absent such allegations,

- 32 -

Sys., LLC, No. CIV 18-1062 MIS/LF, 2022 WL 4598478 *9 (D.N.M. Sept. 30, 2022)(Strickland,

J.)("In order for [the defendant] to be liable as a component part manufacturer, [p]laintiffs must

show that the component part was unreasonably dangerous at the time it left [the defendant]'s

control."); Hernandez v. Grando's LLC, 2018-NMCA-072 ¶ 32, 429 P.3d 1259, 1269  ("Strict

product liability requires proof, among other elements, that the product was sold or leased in a

defective condition.").[13]

     Third, the factual allegations that the FAC provides do not nudge Bussey's claim "across

the line from conceivable to plausible," with respect to whether the alleged defect exists when the

engine leaves Cummins, Inc.'s control.  Twombly, 550 U.S. at 570.  The Vehicle is a 2019 model

---

any inference that the engine is defective when it leaves Cummins, Inc.'s control is possible rather than a plausible inference.
     Finally, Bussey does not plausibly allege facts satisfying res ipsa loquitur's control requirement.  Although New Mexico recognizes that "exclusive control" is a flexible concept, Bussey still must allege that the engine is in Cummins, Inc.'s exclusive control at the relevant time, or that the defect is one that Cummins, Inc. has a duty to anticipate or guard against.  Mireles, 1994-NMSC-041, ¶ 18, 117 N.M. 445, 872 P.2d at 870 (stating "that the meaning of 'exclusive control' in res ipsa loquitur cases is fact specific within any given case" (quoting Trujeque v. Serv. Merch. Co., 1994-NMSC-036 ¶ 7, 117 N.M. 388, 392, 872 P.2d 361, 365)).  The FAC alleges that the engine leaves Cummins, Inc.'s control, presumably years before the Incident, and contains no facts supporting a reasonable inference that Cummins, Inc. retains responsibility for the condition of the exhaust manifold at the time of the alleged failure or that there is no reasonable opportunity for alteration or deterioration.  See State Farm Mut. Auto. Ins. Co. v. Newmar Corp., 543 F. Supp. 3d at 1090 ("'The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.'" (quoting Mireles, 1994-NMSC-041, ¶ 18, 117 N.M. 445, 872 P.2d at 870)).
     For these reasons, Bussey cannot rely on res ipsa loquitur to establish that the exhaust manifold is defective when it leaves Cummins, Inc.'s control.  To the extent that Bussey seeks to invoke the doctrine to support a manufacturing-defect theory, the FAC requires an amendment to allege facts supporting its application.

[13] The Restatement of Torts requires that "the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."  Restatement of Torts § 402A cmt. g.  Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Hernandez v. Grando's LLC. and conclude that to recover under the strict-liability theory, a plaintiff must prove that a defect in the product as manufactured, designed, or marketed creates an unreasonably dangerous risk of injury.

with an unspecified number of miles, and the FAC does not allege facts permitting a "reasonable inference" that the defect exists when Cummins, Inc. manufactures the engine rather than the defect develops over time. Iqbal, 556 U.S. at 678. Rather than provide the Court with facts to support a reasonable inference regarding the temporal element, the FAC states: "The inspection of the Kenworth T800 Bussey was operating showed evidence of an exhaust gas leak in the rear leg of the exhaust manifold." FAC at 28. Moreover, the FAC undermines Bussey's theory with the Southeast ReadiMix mechanic's inspection. Shortly before the Incident, a mechanic inspects the Vehicle and notes an issue with the DEF sensor, but not the exhaust manifold. See FAC ¶¶ 4.5-4.6, at 8. This fact does not support a plausible inference that the defect is present when Cummins, Inc. relinquishes control of the engine.

Fourth, even accepting Bussey's allegations as true, the FAC does not account plausibly for alternative explanations that are at least as consistent with the facts which Bussey pleads. For example, Bussey alleges that he drives from Artesia to Tijeras Canyon, approximately four hours, without issue, but does not allege facts indicating whether this trip is unusually long or otherwise distinctive in a manner that supports an inference that carbon monoxide accumulates during this trip, as opposed to on prior trips. See FAC ¶ 4.1, at 6. Nor does the FAC include allegations from which the Court reasonably can infer whether the alleged defect exists before the trip or develops during it. Similarly, the FAC does not allege whether the damage Leiss describes in the expert report exists before the Incident or is the result of it. These gaps prevent the Court from drawing a reasonable inference that the defect exists at the time the engine leaves Cummins, Inc.'s control, rather than arising during subsequent use.

Finally, in the Reply, Bussey asserts that the FAC satisfies the plausibility standard, because "a likelihood exists that there is a defect in the Cummins engine, which is above and beyond a mere plausibility that a defect exists in the Cummins engine." Reply ¶ 10, at 8. At the motion-to-

dismiss stage, the Court accepts as true that a defect exists and contributes to the Incident. However, this "threadbare recital[]" and conclusory assertion does not cure the FAC's failure to allege that the defect exists when the engine leaves Cummins, Inc.'s control.  Iqbal, 556 U.S. at 663.  Without factual allegations linking the defect to Cummins, Inc. at the relevant time, the FAC does not state a plausible claim.

For these reasons, the Court concludes that Bussey does not state a strict products liability claim against Cummins, Inc.  Accordingly, the Court grants the MTD and dismisses Bussey's strict product liability claims against Cummins, Inc.  If, during discovery, Bussey uncovers new evidence that he can plead, he may move to amend to add back this claim.  At the present time, however, the product liability claim against Cummins, Inc. appears to be one that is in search of facts rather than pleading essential elements supported by existing facts.

**II.     BUSSEY DOES NOT STATE A NEGLIGENCE CLAIM AGAINST CUMMINS, INC., BECAUSE THE FAC DOES NOT ALLEGE THAT CUMMINS, INC. BREACHES A DUTY NOR DOES THE FAC ALLEGE FACTS SUPPORTING THE USE OF RES IPSA LOQUITUR.**

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 134, N.M. 43, 47-48, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person."  Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 100 N.M. 538, 541, 673 P.2d 822, 825, overruled on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 110 N.M. 457, 460, 797 P.2d 246, 249.  Generally, negligence is a question of fact for the jury.  See Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 672, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."

Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 672, 687 P.2d at 729. "Whether a duty exists is a question of law for the courts to decide." Schear v. Bd. of Cnty Comm'rs, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 672, 687 P.2d at 729 (citation omitted). Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons." Baxter v. Noce, 1988-NMSC-024, ¶ 11, 107 N.M. 48, 51, 752 P.2d 240, 243.

New Mexico courts state that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owes a duty to the plaintiff. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 134 N.M. 43, 48, 73 P.3d at 186. New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 49, 73 P.3d at 187 (internal quotation marks omitted). To determine whether the defendant's obligation is one to which the law gives recognition and effect, courts consider legal precedent, statutes, and other principles of law. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 49, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84.[14] "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at

---

[14] The Restatement of Torts requires that: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another . . . ." Restatement of Torts § 315. Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Grover v. Stechel. and conclude that as a general rule, an individual has no duty to protect another from harm.

84.[15] "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 117 N.M. 623, 626, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 134 N.M. 43, 56, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 134 N.M. 43, 57, 73 P.3d at 195.

"A proximate cause[16] of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury

---

[15] The Restatement of Torts states that a no duty general duty to protect another exists unless:

(a)    a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b)    a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement of Torts § 315(a)-(b). Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Grover v. Stechel. and conclude that certain relationships give rise to duty to protect another.

[16] The 2004 amendments to Uniform Jury Instruction 13-305 eliminate the word "proximate" within the instruction. Use Note, N.M. Rul. Amend. Civ. UJI 13-305. The drafters add, however, that the change is "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause." Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305.

would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 134 N.M. 43, 57, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 134 N.M. 43, 57, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 134 N.M. 43, 57, 73 P.3d at 195.

With product liability cases, a "'manufacturer must use ordinary care in the designing, making, inspecting, and packaging of the product.'" Nowell, 372 F. Supp. 3d at 1224 (quoting Therm-O-Disc, 476 F.Supp.2d at 1225 (citing Civ. UJI 13-1410)). Ordinary care is "'that care which a reasonably prudent supplier would use in the conduct of its business.'" Nowell, 372 F. Supp. 3d at 1224 (quoting Therm-O-Disc, 476 F.Supp.2d at 1225 (citing Civ. UJI 13-1410)). A manufacturer's duty to use ordinary care continues "even after the product leaves its possession." M.D. v. CooperSurgical, Inc., No. CIV 24-00730 KWR/KK, 2025 WL 2714205 *7 (D.N.M. Sept. 23, 2025)(Riggs, J.)(citing Civ. UJI 13-1402).[17] The Supreme Court of New Mexico's adoption of Civ. UJI 13-1402 suggests that the duty of ordinary care continues "if [the manufacturer] knows or should know that such risk is caused by the supplier's product." Couch v. Astec Indus., Inc., 2002-NMCA-084, ¶ 45, 132 N.M. 631, 641, 53 P.3d 398, 408. See M.D. v. CooperSurgical, Inc., 2025 WL 2714205 *7.

New Mexico law limits the duties a component part manufacturer owes to the end user. The Court of Appeals of New Mexico explains:

---

[17] The Supreme Court of New Mexico's adoption of UJI 13-1402 suggests that New Mexico law recognizes that a product supplier has a continuing duty of ordinary care to avoid a risk of injury if it knows or should know that such risk is caused by the supplier's product. Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Couch v. Astec Indus., Inc. and conclude that a manufacturer's duty to use ordinary care continues even after the product leaves its possession.

> "[A] supplier of a component part or raw material which is not inherently defective or dangerous at the time it leaves the manufacturer's control, and which part or material is used in the manufacture or making of another product, does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product; in such situation any duty to warn rests upon the manufacturer of the device or finished product."

Bellman, 248 F. Supp. 3d at 1141 (quoting Parker, 1995-NMCA-086, ¶ 16, 121 N.M. 120, 909 P.2d at 7).[18]  "A manufacturer of a nondefective product has no duty to test the suitability of another's finished product which is assembled from several different components."  Parker, 1995-NMCA-086, ¶ 24, 121 N.M. 120, 909 P.2d at 9.  See Therm-O-Disc, 476 F.Supp.2d at 1230 (stating a component part manufacturer "did not owe Plaintiff a duty to ensure that its thermal control was not subject to stresses beyond UL standards when incorporated into the heater -- any such duty would have been owed by the manufacturer of the final product").

Here, Bussey's negligence claim is not sufficient for three independent reasons.  First, Cummins, Inc. does not owe Bussey a duty with respect to the Vehicle, or with respect to

---

[18] The Court of Appeals of New Mexico's review of precedent across several jurisdictions is persuasive, see Parker, 1995-NMCA-086, ¶ 16, 121 N.M. 120, 909 P.2d at 7 (citing Kealoha v. E.I. Du Pont de Nemours & Co., 844 F. Supp. 590, 594 (D.Haw.1994); Kellar v. Inductotherm Corp., 498 F. Supp. 172, 175 (E.D.Tenn.1978), aff'd, 633 F.2d 216 (6th Cir.1980); Shawver v. Roberts Corp., 90 Wis.2d 672, 280 N.W.2d 226, 232-33 (1979)), is consistent with the Court's review of precedent concerning component manufacture's duty, see Cipollone v. Yale Indus. Prods., Inc., 202 F.3d 376, 379 (1st Cir. 2000)("When a component of an integrated product is not itself defective, the maker of the component is not liable for injury that results from a defect in the integrated product. (citing Mitchell v. Sky Climber, Inc., 396 Mass. 629, 487 N.E.2d 1374, 1376 (1986)); Apperson v. E.I. du Pont de Nemours & Co., 41 F.3d 1103, 1107-08 (7th Cir. 1994)(stating that "courts have treated differently manufacturers of inherently safe components when the final assembly, rather than a manufacturing or design defect in the component itself, renders the component dangerous"); Crossfield v. Quality Control Equip. Co., 1 F.3d 701, 704-06 (8th Cir. 1993)(stating that a component manufacture "cannot be expected to guarantee the safety of" the final product); Mohney v. USA Hockey, Inc., 138 F. App'x 804, 813 (6th Cir. 2005)("A component manufacturer can only be deemed liable for product liability purposes if it assembles, designs or otherwise integrates such component into a design which creates a final product.").  Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Parker and conclude that a supplier of a component part, which is not inherently defective or dangerous at the time it leaves the manufacturer's control, and which part or material is used in the manufacture or making of another product, does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product.

components that it does not design or manufacture.  Second, the FAC does not allege facts supporting a plausible inference that Cummins, Inc. breaches its duty of ordinary care with respect to the engine.  Last, the FAC does not allege facts supporting the application of res ipsa loquitur to establish breach.  The Court addresses each deficiency in turn.

    **A.**    **CUMMINS, INC. DOES NOT OWE BUSSEY A DUTY WITH RESPECT TO THE VEHICLE OR WITH RESPECT TO COMPONENTS IT DOES NOT MANUFACTURE.**

As a threshold matter, Bussey's negligence claim is not sufficient to the extent that he predicates it on duties arising from the Vehicle as a whole, or from components that Cummins, Inc. does not design, manufacture, or distribute.  New Mexico law limits the duties of component manufacturers, providing that a component manufacturer of a non-defective component "does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product," and that any such duty rests with the manufacturer of the finished product. Bellman, 248 F. Supp. 3d at 1141.  Accordingly, Cummins, Inc. does not owe a duty to design or incorporate carbon monoxide detection systems into the Vehicle, to ensure the safety of the HVAC system, or to warn about risks arising from non-Cummins, Inc. components or the Vehicle as a finished product.  Thus, as a matter of law, Bussey's claims regarding the HVAC box, see FAC ¶ 5.4, at 10, exhaust detection, see FAC ¶ 5.5, at 10, vehicle design, see FAC ¶5.5, at 10, and any duty to recall or repair such products, see FAC ¶ 5.8, at 11, are insufficient insofar as they seeks to impose duties beyond Cummins, Inc.'s role as a component manufacturer.

In the Response, Bussey does not address meaningfully these duty-premised limitations. See Response at 1-11.  See Reply at 2-4 (arguing that Bussey concedes negligence arguments concerning Cummins, Inc.'s "duty for other manufacturer's components or the Vehicle as a final product," because Bussey does not address the arguments in the Response).  Instead, Bussey focuses on the assertion that "a likelihood exists that there is a defect within the Cummins engine."

Response at 8.  The Court therefore turns to whether the FAC plausibly alleges that Cummins, Inc.

breaches its duty of ordinary care with respect to the engine itself.

> ### B.    THE FAC DOES NOT PLAUSIBLY ALLEGE THAT CUMMINS, INC. BREACHES ITS DUTY OF ORDINARY CARE.

The FAC does not allege facts supporting a plausible inference that Cummins, Inc. does

not exercise ordinary care in designing, manufacturing, inspecting, or packaging the engine.  Under

New Mexico law, a manufacturer must use "ordinary care in the designing, making, inspecting,

and packaging of the product," and ordinary care is "that care which a reasonably prudent supplier

would use in the conduct of its business."  Nowell, 372 F. Supp. 3d at 1224.  The FAC does not

identify any specific act or omission by Cummins, Inc. that falls below this standard.  See MTD at

15 ("Plaintiff fails to assert any facts whatsoever to support that Cummins was negligent in its

design or manufacture of the engine.").  The engine specific facts that the FAC includes are: (i) the

engine light illuminates before the accident, see FAC ¶ 4.5, at 8; (ii) the Southeast ReadiMix

mechanic's inspections shows a faulty DEF sensor, see FAC ¶ 4.5, at 8; and (iii) at some unknown

time after the Incident, Leiss observes a dark stain on the exhaust manifold, see FAC at 28.[19]  The

FAC does not allege how Cummins, Inc.'s design or manufacturing of the exhaust manifold creates

a defect, nor does it allege facts suggesting that Cummins, Inc. conduct deviates from ordinary

care.  Instead, the FAC relies on conclusory assertions that a defect exists and that the product is

dangerous.  These allegations, without supporting factual content, do not permit the Court to draw

a reasonable inference that Cummins, Inc. breaches its duty of ordinary care.

Moreover, as the Court explains in its strict liability analysis, the FAC does not allege facts

supporting a plausible inference that any defect exists when the engine leaves Cummins, Inc.'s

---

[19] The Court does not analyze each fact individually, because Bussey does not provide support or rational for how the individuals facts, whether collectively or individually, show Cummins, Inc.'s actions fall below the standard of ordinary care New Mexico law requires.

control. This same deficiency undermines Bussey's negligence claim. The FAC does not plausibly connect any alleged defect to conduct the Court can attribute to Cummins Inc.

        **C.**      **THE FAC DOES NOT PLAUSIBLY ALLEGE FACTS SUPPORTING THE APPLICATION OF RES IPSA LOQUITUR.**

The FAC does not plausibly allege facts supporting the application of res ipsa loquitur to establish a breach of duty. The FAC pleads res ipsa loquitur as an individual claim, see FAC ¶ 7.1, at 20, and in support of a strict products liability claim, see FAC ¶ 5.26, at 18. Here, both uses do not state a claim.

First, regarding use of res ipsa loquitur as an individual claim, Cummins, Inc. rightly notes that New Mexico does not recognize res ipsa loquitur as an in individual cause of action. See MTD at 18-19 ("To the extent Plaintiff attempts to assert a cause of action for res ipsa loquitur against Cummins, Plaintiff fails to state such a claim because in New Mexico, no such cognizable claim exists."). "Res ipsa loquitur applies after the duty is established. It helps to establish negligence nothing else. Res ipsa loquitur is a rule of evidence, not of substantive tort law." Strong v. Shaw, 1980-NMCA-171, ¶ 10, 96 N.M. 281, 283, 629 P.2d 784, 78.[20] In Renfro v. J. D. Coggins Co., 1963-NMSC-014, 71 N.M. 310, 378 P.2d 130, the New Mexico Supreme Court states that "[r]es ipsa loquitur does not impose liability as a matter of law, but means only that defendant has the burden of meeting or balancing the inference of negligence," supporting the New Mexico Court of Appeals statement that the doctrine is not of substantive tort law. 1963-NMSC-014, ¶ 19, 71 N.M. 310, 316, 378 P.2d 130, 135. See Mireles v. Broderick, 1992-NMCA-011, ¶ 6, 113 N.M.

---

[20] The New Mexico Supreme Court states that "[r]es ipsa loquitur does not impose liability as a matter of law, but means only that defendant has the burden of meeting or balancing the inference of negligence." Renfro v. J. D. Coggins Co., 1963-NMSC-014, 71 N.M. 310, 378 P.2d 130. Accordingly, the Court predicts the Supreme Court of New Mexico will agree with the Court of Appeals of New Mexico in Strong v. Shaw and conclude that res ipsa loquitur is a rule of evidence, not of substantive tort law.

459, 461, 827 P.2d at 849 ("'A *res ipsa loquitur* case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'" (quoting Restatement (Second) of Torts § 328D cmt. b at 157)), rev'd on other ground, 1994-NMSC-041, 117 N.M. 445, 872 P.2d 863.  Accordingly, the Court determines that Bussey's attempt to plead res ipsa loquitur as an individual claim is inappropriate.  In any case, the FAC fails does not invoke the doctrine.

As the Court explains above, plaintiffs typically invoke res ipsa loquitur where "it is impossible for the plaintiff to acquire direct evidence of specific acts of the defendant's negligence."  Thornton, supra, § 14:7.  Under New Mexico law, however, the doctrine does not apply where the plaintiff's theory rests on alleged design or warning defects rather than a flaw in the product itself.  See NMRA, Civ. UJI 13-1420.  This limitation applies in both negligence and strict liability contexts.  See NMRA, Civ. UJI 13-1420.  Although Bussey does not invoke expressly res ipsa loquitur in support of his negligence claim, any reliance on the doctrine would not suffice for the same reasons that the Court discusses in the strict liability analysis: New Mexico law does not permit the use of res ipsa loquitur to establish design or warning defects.  Moreover, to the extent that Bussey seeks to invoke the doctrine to support the breach element of a negligence claim based on a manufacturing defect, the FAC does not allege facts permitting the Court to draw a reasonable inference of negligence under the doctrine.

To rely on res ipsa loquitur, a plaintiff must allege facts supporting the inference that the injury is "of a kind which does not ordinarily occur in the absence of negligence" and that it is attributable to an instrumentality within the defendant's control.  NMRA, Civ. UJI 13-1420.  See State Farm Mut. Auto. Ins. Co. v. Newmar Corp., 543 F. Supp. 3d at 1090.  The FAC does not satisfy these requirements.  First, the FAC does not allege plausibly that the occurrence here, an alleged failure of an exhaust manifold resulting in carbon monoxide exposure, is an event that

ordinarily does not occur in the absence of negligence.  The FAC provides no factual context, expert support, or allegations concerning the expected performance of such components from which the Court reasonably can infer that this failure is inherently indicative of negligent design, manufacture, or inspection.  Nor does the FAC exclude alternative explanations, such as normal wear and tear, deterioration over time, or conditions arising during use.  Absent such allegations, the FAC does not permit the inference that the occurrence "speaks for itself" as evidence of negligence, but instead leaves open multiple plausible, non-negligent explanations.  Mireles, 1994-NMSC-041, ¶ 12, 117 N.M. 445, 872 P.2d at 868.

Second, the FAC does not allege plausibly facts satisfying the doctrine's control requirement.  Although New Mexico treats "exclusive control" as a flexible concept, the doctrine still requires that the probable cause be one that the defendant has a duty to anticipate or to guard against.  Mireles, 1994-NMSC-041, ¶ 18, 117 N.M. 445, 872 P.2d at 870.  Here, the FAC alleges that the engine leaves Cummins, Inc.'s control years before the Incident and does not include facts supporting a reasonable inference that Cummins, Inc. retains control over or responsibility for the condition of the exhaust manifold during the period of use.  See State Farm Mut. Auto. Ins. Co. v. Newmar Corp., 543 F. Supp. 3d at 1090.  The passage of time, combined with the absence of allegations excluding post-sale use, maintenance, or alteration, undermines any inference that the alleged condition is one that the Court can reasonably attribute to conduct within Cummins, Inc.'s control.

The FAC does not allege plausibly that the occurrence ordinarily does not happen absent negligence.  The FAC does not allege plausibly that the Incident is attributable to Cummins, Inc.'s control.  Accordingly, res ipsa loquitur does not apply.  The doctrine does not provide a basis to infer that Cummins, Inc. breaches its duty of ordinary care.

D.     THE FAC DOES NOT ALLEGE PLAUSIBLY THAT CUMMINS, INC. BREACHES A CONTINUING DUTY OF ORDINARY CARE.

- 44 -

Finally, the FAC does not allege facts supporting a plausible inference that Cummins, Inc. breaches any continuing duty of ordinary care after the engine passes from its control to that of Kenworth Trucking and PACCAR, Inc. New Mexico law recognizes that a manufacturer's duty may continue "even after the product leaves its possession," M.D. v. CooperSurgical, Inc., 2025 WL 2714205 *7, where the manufacturer "knows or should know" of a risk associated with its product, Couch v. Astec Indus., Inc., 2002-NMCA-084, ¶ 45, 53 P.3d at 408. The FAC does not allege that Cummins, Inc. has actual or constructive knowledge of the alleged defect. Moreover, the FAC does not identify prior similar incidents, internal reports, recalls, or other facts suggesting that Cummins, Inc. knew or should have known of the exhaust manifold's leak. Nor does the FAC allege that Cummins, Inc. fails to act in response to any such knowledge. Without factual allegations supporting knowledge of a defect, the FAC does not allege plausibly that Cummins, Inc. breaches any continuing duty of ordinary care.

The Court concludes that the FAC does not state a negligence claim against Cummins, Inc. The FAC does not allege plausibly that Cummins, Inc. owes Bussey a duty with respect to the Vehicle or components interfacing with the engine. Nor does the FAC identify any of Cummins, Inc.'s specific acts or omissions that falls below the standard of ordinary care, or allege facts supporting a plausible inference that Cummins, Inc. breaches any continuing duty of ordinary care after the engine leaves its control. Finally, the FAC does not allege facts supporting the application of res ipsa loquitur to establish breach. Accordingly, the Court grants the MTD and dismisses without prejudice Bussey's negligence claims against Cummins, Inc.

## III. THE FAC DOES NOT ALLEGE PLAUSIBLY FACTS SUPPORTING PUNITIVE DAMAGES AGAINST CUMMINS., INC.

The FAC does not allege plausibly facts supporting a claim for punitive damages against Cummins, Inc. As an initial matter, the pleadings are unclear whether Bussey intends to assert a

separate cause of action for gross negligence or instead seeks punitive damages based on allegedly reckless conduct.  The distinction is significant, because New Mexico no longer recognizes a separate category of "gross negligence."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 29, 118 N.M. 203, 212, 880 P.2d 300, 309 ("[T]he concept of gross negligence . . . is a legal anachronism in New Mexico.  This Court formally abolished the distinction between ordinary negligence and gross negligence when it adopted the doctrine of comparative negligence.").  See Dunleavy v. Miller, 1993-NMSC-059, ¶ 21, 116 N.M. 353, 358, 862 P.2d 1212, 1217 ("[W]e therefore abolished the last clear chance rule and the distinction between ordinary and gross negligence."), Scott v. Rizzo, 1981-NMSC-021, ¶ 17, 96 N.M. 682, 687, 634 P.2d 1234, 1240 ("Also abolished is the distinction between ordinary and gross negligence.").  The FAC cites NMRA, Civ. UJI 13-1827, the UJI governing punitive damages, and alleges that the "conduct of . . . Cummins was willful, reckless, and wanton."  FAC ¶ 7.5, at 21.  Bussey further alleges that, because "the conduct of . . . Cummins was willful, reckless, and wanton, Plaintiff seeks punitive damages against each of these defendant as allowed by law."  FAC ¶ 7.8, at 22.  The Court therefore construes the FAC as asserting a request for punitive damages rather than a separate claim for gross negligence.

Under New Mexico law, punitive damages are not compensatory; rather, they exist to "'punish the tortfeasor for wrongdoing and serve as a deterrent.'"  Nowell, 372 F. Supp. at 1237 (quoting Sanchez v. Clayton, 1994-NMSC-064, ¶ 11, 117 N.M. 761, 766, 877 P.2d 567, 572).  Punitive damages require "'culpable conduct beyond that necessary to establish the underlying cause of action.'"  Nowell, 372 F. Supp. at 1237 (quoting Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 58, 346 P.3d 1136, 1152).  A plaintiff must allege facts supporting a plausible inference that the defendant acts with a sufficiently culpable mental state, such as conduct that rises to a "'willful, wanton, malicious, reckless, oppressive, or fraudulent level.'"  Nowell, 372 F.

Supp. at 1237 (quoting Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 12, 118 N.M. 266, 269, 881 P.2d 11, 14).  Recklessness, in this context, requires more than a failure to exercise ordinary care; it reflects "'the intentional doing of an act with utter indifference to the consequences.'" Nowell, 372 F. Supp. at 1238 (quoting Torres v. El Paso Elec. Co., 1999-NMSC-029, ¶ 28, 127 N.M. 729, 740, 987 P.2d 386, 397).

The FAC does not allege plausibly that Cummins, Inc.'s acts with a sufficiently culpable state of mind.  Bussey's punitive-damages allegations focus principally on the absence of carbon monoxide detectors, warning lights, alarms, or gauges in the Vehicle's cabin.  See FAC ¶¶ 7.5-7.10, at 21-23.  In the FAC, Bussey states: (i) the "defendants intentionally chose not to put any carbon monoxide detector, warning light, alarm, or gauge in the cab despite knowing that carbon monoxide poisoning is dangerous . . . ," FAC ¶ 7.5, at 21; and (ii) the "defendants knew that carbon monoxide poisoning is a potentially fatal risk of harm . . . yet it provided him with absolutely nothing to detect carbon monoxide in the cabin," FAC ¶ 7.7, at 22.  As the Court explains in its negligence analysis, however, Cummins, Inc., as a component manufacturer, does not owe Bussey a duty with respect to the Vehicle as a finished product or components it does not design or manufacture.  See Bellman, 248 F. Supp. 3d at 1141.  The FAC therefore attempts to premise punitive damages on duties that New Mexico law does not impose upon Cummins, Inc.  Moreover, the FAC does not allege facts supporting a plausible inference that Cummins, Inc. acts with the culpable mental state necessary to sustain punitive damages.  The FAC does not identify prior similar incidents, internal reports, recalls, regulatory violations, or other facts suggesting that Cummins, Inc. knows of a defect in the exhaust manifold and consciously disregards a known risk of harm.  See, e.g., Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1242 (D.N.M. 2008)(Browning, J.)(holding a genuine issue of material fact on punitive damages exists where a party has "demonstrated that persons at Eli Lilly may have been aware of a problem, perceived or

actual, linking Prozac with increased suicidality and violence"); <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d 1189, 1196 (D.N.M. 2007)(Browning, J.)(granting punitive damages where the defendant "intentionally deceived Applied Capital, misrepresenting Legato Staffing's financial resources and creditworthiness, the existence of the rig, and the bona fides of the transaction generally"); <u>Faniola v. Mazda Motor Corp.</u>, No. CIV 02-1011 JB/RLP, 2004 WL 1354469, at *1, *6 (D.N.M. April 30, 2004)(Browning, J.)(noting that "a reasonable factfinder could [not] find that Mazda had a culpable mental state in designing [a] fuel tank" when "Mazda's design was and is accepted in the industry," and the design met "federal safety standards," although the facts show that "[t]he brake shoe rotated under Faniola's vehicle, striking several places, and punctured her gas tank," causing the car to catch fire).  Nor does the FAC plausibly allege conduct rising to the level of "willful, wanton, malicious, reckless, oppressive, or fraudulent" behavior.  <u>Nowell</u>, 372 F. Supp. 3d at 1238.  Accordingly, because the FAC does not plausibly allege facts supporting punitive damages, the Court grants the MTD and dismisses Bussey's punitive-damages claim against Cummins, Inc.  If discovery uncovers further facts that Bussey can plead, he can seek to amend the FAC and add Cummins, Inc. and the claims against Cummins, Inc. back into the dispute.

**IT IS ORDERED** that: (i) the Defendant Cummins Inc.'s Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum, filed October 22, 2025 (Doc. 46), is granted, and (ii) the claims in the Plaintiffs First Amended Complaint, filed September 29, 2025 (Doc. 43-1), against Cummins, Inc., are dismissed without prejudice.

_____
UNITED STATES DISTIRCT JUDGE

*Counsel:*

Jeffery E. Pratt
Lucas W. Williams
DeSouza Injury Lawyers
San Antonio, Texas

     *Attorneys for the Plaintiff*

Matthew J. Armijo
Hartline Barger, LLP
Albuquerque, New Mexico

-- and --

David H. Estes
Spencer R. Chaiken
Hartline Barger, LLP
Dallas, Texas

     *Attorneys for Defendants Kenworth Truck Company and PACCAR Inc.*

Benjamin F. Feuchter
Jennings Haug Keleher McLeod Waterfall LLP
Albuquerque, New Mexico

-- and --

Mara Cohara
Lathrop GPM, LLP
Kansas City, Missouri

-- and --

Sam Garcia
Lathrop GPM, LLP
Dallas, Texas

     *Attorneys for Defendant Cummins, Inc.*

Matthew J. Armijo
Hartline Barger, LLP
Albuquerque, New Mexico

     *Attorneys for Defendant MHC Truck Leasing, LLC*